The fourth district appellate court of the state of Illinois has now convened the Honorable Thomas M. Harris presiding. Good afternoon. We're on the record in case number 4-22-0693 People v. Brian Simmons. Council, could you state your appearances for the record? Jamie Montgomery from the office of the state appellate defender appearing on behalf of the petitioner appellant, Mr. Brian Simmons. Laura Bailon on behalf of the people. All right. Thank you, Council. Ms. Montgomery, you may proceed with your argument. Good afternoon, Your Honors. Council, may it please the court. Brian Simmons is currently serving a mandatory natural life sentence for an armed robbery he committed when he was just 24 years old based on his having committed two prior Class X offenses. Those prior offenses were committed when he was just 16 and 20 years old, and for those offenses, Brian was sentenced to six and eight years respectively, a minimum and near minimum sentence. In his motion for leave to file a successive post-conviction petition, Brian asserted that his mandatory natural life sentence violates the proportion of penalties clause of the Illinois Constitution because viewed through society's current lens, as reflected by the 2021 amendment to the Habitual Criminal Act, it shocks the moral sense of the community that he is serving a life sentence based on predicate offenses that no longer qualify as predicate offenses today, nor evince the lack of rehabilitative potential necessary to constitutionally justify a mandatory life without parole sentence. The issue here is whether the trial court erred in finding that Brian had failed to show cause and prejudice. Of course, the petitioner shows cause by identifying some objective factor that impeded his ability to raise his claim during earlier proceedings. This includes situations where a factual or legal basis for the claim was not objectively available during those prior proceedings. Ms. Montgomery, may I interrupt you? Just as to cause here, you've indicated that this is a Miller-based claim, is that right? Well, it has connections to Miller in that arguably the reasons behind the legislature's statute are based in the advances in neuroscience and things that are recognized in Miller and its progeny. But it is not dependent solely on Miller, nor is it a claim that Mr. Simmons should have a Miller-compliant sentencing hearing. So it's the underpinnings of Miller, the research that you're talking about that underpin Miller that is the basis for this claim then, is that right? That is correct. And the Supreme Court in Dorsey, granted it was dicta, but it indicated that the unavailability of Miller did not preclude the defendant in that case, or in cases similar to it, from bringing a proportionate penalties argument in earlier proceedings. This court, in other cases since, have relied on Dorsey. Why isn't a defendant here, given the basis of his claim precluded from establishing cause? In other words, why are you saying that he didn't have the tools available to him in earlier proceedings for raising this issue? Well, there's two important distinctions. First, in Dorsey, the defendant received a discretionary de facto life sentence. Here, at the time that Mr. Simmons was sentenced, he received a mandatory natural life sentence. The court had no discretion to consider anything. It did not have the opportunity to consider youth or any of its attendant circumstances to determine whether or not a natural life sentence was appropriate here. Regardless of whatever the court thought about those things, it could only impose a life sentence on Mr. Simmons. And the reason that this was previously unavailable to him... I spoke earlier about Miller sort of being the underpinning. Now, it is the statutory change, however, the amendment in 2021 to the Habitual Criminal Act, which Mr. Simmons argued in his motion, and we've argued in the briefs, it indicates the societal shift of what we now view as being morally acceptable. And while that shift arguably was set off by Miller and the findings and science underpinning it, before this statutory amendment occurred, every court in the state had held that the reason that the Habitual Criminal Statute did not violate the Proportionate Penalties Act was because the Habitual Criminal Act represented a reasoned... The legislature had considered the seriousness of the offense versus what the fact of the defendant having two prior Class X convictions, what that said about their rehabilitative potential, and that it indicates that the legislature believed that a defendant had no rehabilitative potential. Therefore, once you've committed your third Class X, it does not violate Proportionate Penalties to send you to prison for the rest of your natural life. And... Would the legislature not have been able to make its intention clear by including a retroactivity provision in the statute when it was amended? Certainly, the legislature had the opportunity to make the statute clear in stating whether or not this would be retroactive. I would note that this amendment was part of the Public Act 101-652, known as the Safety Act, which encompassed a very broad overhaul of criminal justice in this state. And reading the legislative debates on the Public Act, there was a lot of this particular amendment to the Habitual Criminal Act, however, was not. So it is... Turning to the legislative debates does not really assist us in looking at retroactivity. And certainly, an argument should be made... Doesn't it assist us by seeing the absence of a retroactivity provision? Legislature knows well how to do that. The legislature knows how to do it and is presumed to have considered that. And of course, the legislature has the right to create different classes of offenses and offenders. However, there is no reason to treat, you know, there's no reason to treat different defendants... To create a separate class of defendants here, based solely on when they committed their offense. And whether or not the lack of a retroactivity clause violates equal protection is certainly something that I would encourage counsel on remand to add to the petition. But because it wasn't in the petition, it was not addressed in the briefs here because it's just not an issue that we can reach in this. The court doesn't have to determine whether or not the statute is retroactive. This court simply has to determine whether or not he made a prima facie showing of cause and prejudice. But it seems to me that when you bootstrap the argument that there is a change reflected by a non-retroactive statute as being a basis for relief under proportionate penalties, I'm not sure why that wouldn't apply to any statute which lessens a penalty and that does not contain a retroactivity provision that that the proportionate penalties clause will be used to make it retroactive. Well, I think that this, you know, in this particular situation, there's going to be, you know, I don't have statistics, but the amount of defendants in this state who are serving natural life sentences based on the Habitual Criminal Act, who are there due to offenses that were class X offenses committed as minors, I'm going to suggest is fairly small. And Mr. Simmons here happens to have both of his offenses no longer qualify. And the thing is, is that the amendment, the change to the amendment provided the, provides the evidence that was previously lacking to support his claim that the, that society no longer views this as a constitutionally sound sentence. And the, without that, you know, that's the very basis upon which previous cases of holding challenges to the habitual criminal statute based on having, you know, reason those were upheld was because the statute said nothing about treating those offenses differently. And now we have the very thing that was found to justify the constitutionality of the statute has been changed to indicate that this is a, this is a change in the law. This is a new recognition of what the people of Illinois believe is a fair and just and proportionate sentence and whether or not convictions obtained when you were under a certain age, evince the same lack of rehabilitative potential that they do when one is, when they're committed as an adult. So turning to the prejudice prong to ultimately succeed on a proportion of penalties time, the defendant must show that the penalty imposed either is cruel degrading or so wholly disproportionate to the offense that it shocks the moral sense of the community, or that it differs from one imposed for an offense containing the same elements. Here, of course, we're, the argument that Mr. Simmons made is under the first prong. And at the leave to file stage, all he needs to do is make a prima facie showing of prejudice. And here, Brian sufficiently alleged the existence of facts personal to him to make that prima facie showing of prejudice. First, the length of Brian's sentence stems entirely from his having to at the time qualifying predicate offenses. So if either of Brian's offenses did not qualify as a predicate offense, the trial court would not have been authorized to impose a sentence longer than 60 years in given an extended term sentence. Brian's motion for leave to file argued that the 2021 amendments to the habitual criminal act, as we've, as I've stated, embodied the legislature's recognition that society has evolved and the moral sense of community no longer views it as fair, just or decent to impose a mandatory natural life sentence on a defendant predicated upon offenses committed when he was a minor. And his assertion that the statutory amendment reflects societal change and, you know, speaks to what might offend proportionate penalties is supported by case laws such as the United States Supreme Court in Graham quoting Atkins v. Virginia that the clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislature. Now, Brian also asserted that the amendment reflected society's growing understanding of the link between brain immaturity, impulse control, and decision making, as well as how brain development affects the defendant's rehabilitative potential. Brian noted that not convictions were obtained when he was a minor and therefore do not qualify as predicate offenses today. He also asserted that he did not personally injure anyone during this offense or in his prior offenses, and that his prior offenses were the result of the transient traits of youth. The record supports Brian's claim that his prior offenses were not very serious despite being class X offenses in that he was sentenced to the six-year minimum and just two years above the minimum eight years for his two prior offenses. And moreover, the record here reflects that Landis Simon, Brian's co-defendant, and arguably the more culpable of the two, received a 45-year sentence. Now, based on all this, Brian Simmons made a prima facie showing that, as applied to him, the natural life sentence mandated by the Habitual Criminal Act is particularly harsh and unconstitutionally disproportionate. The trial court should have granted him leave to file and permitted him to litigate his claim that, as applied to him, a mandatory sentence of natural life in prison with no possibility of parole grossly distorts the factual realities of the case and does not such that it shocks the moral sense of the community. For all these reasons and those presented in the briefs, this court should find that Brian Simmons made a prima facie showing of cause and prejudice, reversed the trial court's order denying him leave to file the successive post-conviction petition, and remanded the cause for further post-conviction proceedings, including the appointment of counsel, where hopefully counsel will amend the petition to include a claim of about retroactivity. All right, thank you, Ms. Montgomery. You'll have time in rebuttal. Ms. Bailon, you may proceed with your argument. May it please the court, counsel, Laura Bailon, on behalf of the people. The defendant here is seeking leave to file a second successive post-conviction petition, having filed an initial post-conviction in 2000, which was denied in 2003, and a successive post-conviction petition in 2004, which was amended in 2005, amended again in 2012, and then dismissed in 2013. Because the Post-Conviction Hearing Act contemplates the filing of only one post-conviction petition, he now faces an immense procedural default hurdle, and it must show cause and prejudice for not raising the claim in an earlier petition. Here, defendant's claim is that his sentence violates the Illinois Constitution's Proportionate Penalties Clause because it's based on convictions that would no longer qualify under the Habitual Criminal Act after it was amended in 2021 to require that predicate offenses be committed when a defendant is age 21 or over. The defendant concedes that his sentence was constitutional when he was sentenced, but argues that the constitutionality has now changed after 2021 when the Habitual Criminal Act was amended. Constitutionality of his sentence has not changed. The Illinois Proportionate Penalties Clause is violated where a punishment is so wholly disproportionate to an offense as to shock the moral sense of the community, but here the legislature made a change that is prospective only, not retroactive. That prospective change does not show that the moral sense of the community is shocked by the prior sentencing scheme as the legislature left in place the prior sentencing scheme for previously sentenced offenders, showing that the legislature did not intend to revisit defendant's sentence or those similarly situated. The legislature's amendment changed the applicability of the statute going forward, but it does not apply to defendant and it did not change the constitution. Now, defendant also argues that principles relating to Miller or underpinning Miller also led to or underpin the 2021 amendment, but Miller principles do not provide cause for raising an Illinois Proportionate Penalties Claim in a successive post-conviction petition. This Miller itself does not apply because defendant was an adult and also while Miller principles provide cause to raise federal eighth amendment claims in successive post-conviction petitions, Illinois cases have held that Miller principles do not provide cause to raise Illinois proportionate penalties claims in successive post-conviction petitions because Illinois courts have long recognized both as applied proportionate penalties claims and also recognize the special relationship between youth and rehabilitation and the need to consider a defendant's mentality. Under defendant's argument, the 2021 amendment was animated by Miller principles, but Haynes, Davis, Dorsey, and Clark have all held that Illinois proportionate penalties claims animated by Miller principles were claims that could have been raised before Miller. Thus, they also could have been raised before the 2021 amendment and Miller principles plus amendment do not provide cause for defendant to raise the proportionate penalties claim now. Concerning prejudice, defendant must show that his conviction shocks the moral sense of the community to show a proportionate penalties violation, not just that a statute that doesn't apply to him would have led to a different sentence because the 2021 amendments don't apply to him. So, in relying only on the non-retroactive statute and attempt to show the shock to the community, defendant has not shown prejudice either. So, the people would ask that this court affirm the trial judge's order denying leave to file a second successive post-conviction petition. Are there any questions? Well, I don't see any. In that case, the people would ask that the court affirm the trial judge's order. All right. Thank you, Ms. Bailon. Ms. Montgomery, rebuttal argument? Had Brian raised his proportionate penalties challenge to his mandatory natural life sentence in his direct appeal or in either of his prior post-conviction proceedings, the claim at that time would have been based on the standards of decency at that time. However, at the time of Brian's sentencing in 1997 and his prior post-conviction proceedings in 2000 and 2012, Illinois law expressly foreclosed his proportionate penalties challenge based on society's then belief that for the purposes of the Habitual Criminal Act, there was no reason to treat convictions obtained while a minor any differently than convictions obtained while an adult. As noted in our briefs and earlier in my argument, Illinois courts, even up until 2015, repeatedly upheld the use of convictions obtained while the defendant was a minor as predicate offenses under the Habitual Criminal Act on the basis that there was no indication in the Juvenile Court Act or in the criminal code that such convictions could be treated any differently than adult convictions. Now, while the argument in Brian's petition or in his motion and in our briefs mentions that Miller provides a background and is an underlayment here, this claim is not based on Miller. Miller is not dispositive here. And as Haynes, Dorsey, Clark, all of those cases involved discretionary sentencing. Here we have mandatory life sentencing. The court here had no discretion whatsoever to consider anything about whether or not the life sentence should have been given here. He had the qualifying convictions at the time, boom, life sentence. And the non-retroactive, you know, whether, I'm sorry, let me back up. Both counsel and I have put forth arguably valid arguments regarding the retroactivity and what the meaning of the legislature is saying nothing about retroactivity means. That is a prima facie showing. There is a reason to argue both ways. It is at least arguable that Mr. Simmons petition alleged, you know, he made a prima facie showing of prejudice. And again, this court does not have to determine whether or not the statute is retroactive. That is a question for another day. That is a question that perhaps will be, you know, be considered in the trial court upon remand or in another case. But here, all that Brian had to do was show that, you know, the law had changed and the change in the law now provided him the things he needed to make his proportionate penalties clause claim. And doesn't it really just give him the opportunity to make his claim better than he could have made it before? But he could have still made the claim before. No, he could not have raised this claim before. As noted in my reply brief, there is a difference between some, you know, having nothing to do with the statute and having the statute directly against you. And here, this wasn't just some helpful support that didn't exist before. There was case law directly on point. In fact, at the time Brian was sentenced, just two years before that, the Supreme Court had said unequivocally that in Dunnegan that the habitual criminal act was constitutional and it did not matter whether or not convictions were, you know, the priors were when you were a juvenile, but that had no bearing on it for the very reason, as I said before, that the statute, neither the habitual, neither the criminal code or the juvenile code said anything about treating the offenses differently. And so Brian identified a change in the law that spoke directly to that reasoning and said, we're no longer going to say that these offenses should be treated the same. In fact, they're treated differently. You can't use these anymore. And Brian's sentence is based solely on his having those prior qualifying offenses. And the fact that he is serving a life sentence without offenses that today would qualify him for a mandatory life sentence for an offense that would no longer qualify is shocking to the conscience, particularly, and again, it's not necessarily relevant to the argument here today, but it's particularly shocking given that the more culpable co-defendant got a 45-year sentence and is already out of prison. So for these reasons, we again ask the court to reverse the trial court. Thank you. All right. Thank you, counsel. Thank you both. The case will be taken under advisement and a written decision will be issued. The court stands in recess.